**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-55336 |
| Plaintiff-Appellee, | D.C. No. 2-12-cv-9134-RGK |
| v. | |
| CEFERINO ORDEN OLIVAR, JR., | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 5, 2016
Pasadena, California

Before:  SILVERMAN and GRABER, Circuit Judges, and EZRA,[**] District Judge.

Appellant Ceferino Orden Olivar, Jr., was naturalized as a United States

citizen in May 2002; in April 2009, he pled guilty to conspiracy to commit visa

fraud in violation of 18 U.S.C. §§ 2, 371, and 1546.  According to the plea, the

conspiracy began in July 2001, though Appellant did not commit an overt act in

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

furtherance of the conspiracy until after he was naturalized. In 2012, the United States Department of Justice's Office of Immigration Litigation ("OIL"), with written authorization from the United States Attorney, moved to revoke Appellant's citizenship. The district court found at the conclusion of a bench trial that Appellant's naturalization should be revoked because he lacked good moral character during the relevant statutory period.

Appellant argues that the district court lacked jurisdiction over the revocation proceedings, because they were not instituted by the United States Attorney for the Central District of California. The district court's determination that it had jurisdiction is a question of law reviewed de novo. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995). Title 8 U.S.C. § 1451(a) requires the United States Attorney for the relevant district "to institute [denaturalization] proceedings." Here, OIL sent a letter and affidavit of good cause to the appropriate United States Attorney seeking authorization to file the denaturalization suit; the United States Attorney signed an authorization letter, but did not sign the complaint bringing the proceeding into court. Permitting OIL, rather than the United States Attorney, to commence the suit does not change the government's burden to provide "'clear, unequivocal, and convincing' evidence that citizenship should be revoked," nor does it create a new mechanism for

2

revoking citizenship. *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012) (quoting *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007)). However, it is clear that when the United States Attorney for the district signs a complaint, she initiates the lawsuit. Signing an authorization letter, although sufficient to satisfy jurisdictional requirements here, is not good practice; similar jurisdictional challenges should be avoided in the future by ensuring that the United States Attorney for the district has actually signed the complaint bringing denaturalization proceedings before the district court.

Appellant also argues that the district court incorrectly found that entering into a criminal conspiracy to violate the law is evidence of bad moral character, where no overt act was taken in furtherance of the conspiracy until after the date of naturalization. The trial court's conclusion of law is reviewed de novo. *Star v. West*, 237 F.3d 1036, 1038 (9th Cir. 2001). An individual seeking citizenship must be "a person of good moral character" in the five years prior to naturalization. 8 U.S.C. § 1427(a). An individual lacks the good moral character required for naturalization if, in the absence of exigent circumstances, he or she "[c]ommitted unlawful acts that adversely reflect upon the applicant's moral character" during the statutory period. 8 C.F.R. § 316.10(b)(3)(iii); *see* 8 U.S.C. § 1101(f), *Dang*, 488 F.3d at 1141. A court may consider acts during the good moral character

3

period "whether or not the applicant is convicted for the acts during that period." *Dang*, 488 F.3d at 1141. Where an overt act has been committed in furtherance of the conspiracy, the conspiracy itself began at the time the defendant agreed to commit the crime. *United States v. Garcia-Santana*, 774 F.3d 528, 537 (9th Cir. 2014). A conspiracy to commit visa fraud in the naturalization context involves the "intent to defraud" and is necessarily "a crime involving moral turpitude." *Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993) (quoting *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980) (per curiam)). Appellant admitted to entering into the conspiracy during the good moral character period and undertook several overt acts in furtherance of the conspiracy. He therefore did not have good moral character when he applied for naturalization, because he had already agreed to commit visa fraud. Accordingly, he procured his naturalization illegally.

Finally, Appellant argues that the district court's denaturalization order was in error because there was no conclusive evidence that his failure to disclose his involvement in a conspiracy was material. The district court made clear that Appellant was denaturalized because he lacked good moral character during the statutory period, and did not find that Olivar should be denaturalized because he made a material misrepresentation on his N-400 form. Accordingly, this issue is not pertinent to the questions raised on appeal.

**AFFIRMED.**